## THOMAS P. IVES, Trustee, v. THOMAS HARRIS.

The gift by a will of an equitable fee in real estate can no farther be affected by a codicil thereto, than is absolutely necessary to give the latter effect.

Where the will vested such a fee in a married woman, to her sole and separate use, by the words, " to her, her heirs and assigns," with power to the trustee to sell such parts of the estate as he might deem expedient for better investment, or to pay over the proceeds of the property sold to the *cestui*, as he might think that the circumstances of her situation required, and the codicil conferred upon her the power to appoint to the estate by will during coverture, and provided, in its closing clause, that in default of such appointment, the trustee should hold the same for her heirs and *assigns* forever: *Held*, that the equitable fee expressly given by the will was not limited by the closing clause of the codicil, which was to be regarded as a mere affirmation, from abundant caution, that in case of the non-exercise of this power, the destination given to the property by the will was not to be disturbed: *Held further*, that there being no clause in the will or codicil forbidding the equitable tenant in fee to alienate, during coverture, her equitable estate, or to anticipate the income of the same, she might, notwithstanding the estate was to her sole and separate use, alienate the same by a deed executed by her and her husband in solemn form in conformity to the statute, and that, upon receiving such conveyance, the grantee was entitled to call upon the trustee to release *pro tanto* his legal interest; and that the *power*

to the trustee to sell for better investment or for her benefit, did not restrict her right of alienation, by virtue of her *estate.*

The case of *Cook* v. *Metcalf*, 2 R. I. Rep. 355, criticised, and the opinion and decision explained and limited.

THIS was an amicable bill for the specific performance of a contract of purchase of a lot of land, situated at the southeast corner of Cooke and Manning streets, in Providence ; the contract of purchase providing, that a good title by quitclaim deed should be given to the wife of the purchaser ; and that if the title offered was not satisfactory to his counsel, an amicable suit should be instituted to decide upon the same, without expense to the purchaser.

The title of the plaintiffs, proposed to be given, accrued under the *seventh*, or residuary clause, of the will of Mrs. Eliza Ward, made on the thirteenth day of June, 1841, and the codicil to the same, made on the second day of October, 1844, both of which were admitted to probate on the eighth day of April, 1845, and were as follows :—

" *Seventh.* I give and devise the rest and residue of all my estate, real, personal and mixed, in possession, reversion and remainder, to my respected kinsman, Moses Brown Ives, to him, his heirs and assigns forever, in trust, nevertheless, for the sole, separate, and exclusive use and benefit of my niece, Eliza B. Rogers, her heirs and assigns forever, with power to the said Moses Brown Ives, trustee as aforesaid, to sell and convey such part or parts of said estate as he may deem expedient, and to invest the proceeds in some other property at his discretion, subject to the trusts herein declared, with further power to the said trustee to pay over to my said niece, Eliza B. Rogers, such of the proceeds of any property sold as aforesaid, as he may think the circumstances of her situation may require."

The codicil, after reciting the above clause of the will, *verbatim,* proceeds :—

" Now, I do by this codicil order and direct that the said Moses B. Ives, his heirs and assigns, shall collect and receive the

rents, income, profits and dividends of all the property in the said seventh clause of my said will devised, and pay over the same to the said Eliza B. Rogers, wife of Joseph Rogers, taking her separate receipt therefor, for her sole and separate use and benefit, independently and exclusively of the said Joseph Rogers, her husband, and without being in any wise subject to his debts, control, interference or engagements; and upon further trust, that if the said Eliza B. Rogers shall depart this life in the lifetime of the said Joseph Rogers, her husband, then and in such case, the said Moses B. Ives, his heirs or assigns, do and shall, from and after the decease of the said Eliza B. Rogers, stand and be possessed of and interested in the said estates upon and for such trusts, intents and purposes as the said Eliza B. Rogers, notwithstanding her coverture, shall, by her last will and testament in writing, or any codicil or codicils thereto, or any writing or writings in the nature of, or purporting to be, a will or codicil, direct or appoint; and in default of such direction or appointment, in trust for the heirs and assigns of the said Eliza B. Rogers, forever."

In the year 1857, Moses Brown Ives, the trustee named in the will, died; and his son, Thomas Poynton Ives, party plaintiff to the bill, was appointed by this court, at the instance of Mr. and Mrs. Rogers, trustee under this will, in the place of his father; and on the thirteenth day of October, 1862, with the consent of Mr. and Mrs. Rogers, made the contract of sale with the respondent now sought to be enforced by the bill. The title offered, which was a deed from the trustee appointed by the court, under the power of sale contained as above in the will, and the deed also of Mr. and Mrs. Rogers, executed and acknowledged as required by the statute of this State for the conveyance of the wife's estate, and which the counsel for the respondent objected to, was set forth in the bill with the contract; whereupon, the respondent demurred to the bill, and the cause was submitted to the court upon briefs.

*James Tillinghast, for the respondent :—*

I. The power of sale given in Mrs. Ward's will is revoked by the codicil. The will evidently contemplates, that whatever

moneys, in the discretion of the trustee, the circumstances of Mrs. Rogers may require, are to be raised by sale of the estate, while the codicil applies only the rents and income to this purpose, (evidently contemplating they will prove sufficient,) leaving the estate itself inalienable during her life, or, at least, during her coverture.

II. At the most, the power of sale is strictly a *discretionary power to Moses B. Ives*, the first trustee, *personally;* and the will containing no language extending it, or showing. any intent to extend it, to his successors in the trust for the time being, it expired with his decease, and does not pass to the new trustee, the present complainant, appppointed by the court. However much it is to be regretted for the purposes of this particular trust estate, this will admits of no other construction without direct departure from, and an entire disregard of, all settled authority on this subject. Hill on Trustees, 211–226, 489, notes and cases ; Sugden on Powers, 152, 214 ; *Townsend* v. *Wilson*, 1 Barn. & Ald. 608 : *Cole* v. *Wade*, 16 Vesey, 27 ; *Fordyce* v. *Bridges*, 2 Phillips, 497, (22 Eng. Cond. Ch.); *Bowles* v. *Weeks*, 14 Simons, 591, (37 Ib.); *Newman* v. *Warner*, 1 Simons, .N. S. 457, (40 Ib.); *Oglander* v. *Oglander*, 2 DeG. & Sm. 381 ; *Wilson* v. *Pennock*, 3 Casey, (27 Penn. St. Rep.) 238; *Belote* v. *White*, 2 Head, (Tenn.) 703.

*T. A. Jenckes, for the complainant :—*

I. The new trustee has the same power of sale as the trustee originally named. The decree appointing him substitutes him to the place of the original trustee, with all his powers. This is in accordance with the general rule in such cases. Hill on Trustees, 211. But the defendant seeks to bring this case within the exception to this rule, (stated in the next paragraph of Hill, p. 211,) where the power is of a kind that indicates a personal confidence. No such intent to limit the powers of the trustee can be fairly inferred from the language of the will. This instrument is remarkable for several important omissions. Two of these have already been pointed out in explanation of the attempt to supply them by the codicil. Another omission, and one common to most of the wills drawn and executed in this State, till recently, is that of any provision for the appointment of a new

Ives, trustee, v. Harris.

trustee. Other necessary provisions in trust wills, not important to this case, however, cannot be found in either the will or codicil. Although we find in the will no provision for the appointment of a new trustee, yet a court of chancery always had the power to supply the omission. The rule of decision in that court, as above quoted, is to the effect, that a trust once created shall not only be sustained, but sustained in full force, and shall not be lost, destroyed, or impaired, by the non-acceptance or the death of a trustee, but that *the trust* shall be executed, as created, irrespective of the person named as the person chosen to execute it.

The burden of proof that the powers of a trustee were personal in their nature lies upon the party seeking to bring the case within the exception to the general rule of the court. This case is clearly within the general rule. The devise is to the trustee in fee. His successor, appointed by the court, therefore takes a fee. The entire legal estate is vested in the trustee, whether named in the will, or to be named by the court. Three powers only of the trustee are specifically named : the power to sell; the power to reïnvest ; the power to apply the proceeds of sale to the support of the beneficiary. The powers to sell and reïnvest are clearly within the residuary powers of a trustee. And these powers are given to the trustee, and not to the person named. Thus, the power to sell is granted to "Moses Brown Ives, *trustee as aforesaid.*" The words, " as he may deem expedient," simply imply the ordinary discretion of selection of the portions to be sold, and not the special discretion which is reposed in the judgment of a particular person. So also of the reïnvestment. It is to be made under the ordinary liability of the trustee, and at his ordinary, not special, discretion, and *subject to the trusts declared.* Any new trustee may as well exercise these powers, under his ordinary liability as trustee, with safety to the trust estate. These powers are granted to the trustee for the purpose of the trust, and the protection of the trust estate and the preservation of the trust, and not to the person named as trustee.

The cases cited by the defendant's counsel show that the fair construction of the instrument should be made from the whole taken together, and not from a critical view of certain phrases in it. To this point, especially, is 1 Sugden on Powers, 152, § 50.

In *Cole* v. *Wade*, 16 Vesey, 27, the trust and powers were of such a nature that the ground of their creation was personal confidence entirely. In effect, the testator granted to his executors the power of making a will so far as his residuary estate was concerned, limiting the objects of his bounty to his "relations and kindred." It is manifest that such a power could be executed only by the persons named. In *Fordyce* v. *Bridges*, 2 Phillips, 497, the trustees were empowered to select investments for personal estate in different countries, under different laws,—not to sell and reïnvest under the law of England. Such a choice necessarily required a special discretion, which could not be revived in new trustees appointed by the court. *Bowles* v. *Weeks*, 14 Simons, 591, has no application to the present case. In *Newman* v. *Warner*, 1 Simons, (N. S.) 457, the grant of the power was not made to the trustees *as trustees*, as in this case, but to the persons named as trustees for the purposes of preserving contingent remainders, and "*to the survivor of them and the executor's and administrators of such survivor*," thus limiting the exercise of the power to persons coming within this description. *Oglander* v. *Oglander*, 2 DeG. & Sm. 381, has no application to the case at bar. The first American case cited, *Wilson* v. *Pennock*, 27 Penn. St. Rep. 238, is a direct authority in favor of the plaintiff. The marginal note to that case is as follows, (see 17 U. S. Dig. 581): "Discretionary powers conferred on a trustee will devolve upon his successor, appointed by the Court of Common Pleas under the act of June 14th, 1836, after the first had been removed." The Tennessee case, *Belote* v. *White*, 2 Head, 703, has no bearing on the case at bar, as in that case, the power of sale was expressly limited to the trustees named, "or any two of them, or the survivor of them." 20 U. S. Dig. 286.

II. In the case at bar, the title offered is one that cannot be objected to upon the technical grounds already considered. The trustee holds and represents the entire legal estate, and conveys it. The beneficiary (her husband joins) holds the entire equitable estate, and makes conveyance of that to the purchaser. There could have been no question about the power of conveyance under the original will. It is not necessary to cite authorities, when the general rule is as well established as that already

quoted. But in this case the codicil settles the only doubt that might have been raised upon the validity of the conveyance tendered. The trustee is therein directed to convey the trust estate, in case the beneficiary should die in the lifetime of her husband and without exercising the power of appointment by will, to her "heirs *and assigns*" in fee. This direction recognizes the beneficiary's power of conveying her equitable estate by deed. There is no language which can be construed as intending to put a restraint upon either anticipation or alienation of her property. A good title to the estate contracted for is therefore tendered to the defendant, and he should be decreed to perform his contract.

*Tillinghast, in reply :—*

I. The power of sale in the will is revoked by the codicil. One obvious purpose of the codicil was not so much to provide for the appropriation of the annual income, (for under the will, Mrs. Rogers would have been entitled to this, and, if received by her husband, equity would have held him to have received it as her trustee,) but to vest, beyond all question, the legal title of the estate in the trustee, during the life, or at least, during the coverture, (whichever, in this respect, may be the proper construction of this codicil) of Mrs. Rogers. Had the will stood alone, it might have been extremely doubtful whether she did not take the full legal title in fee simple as an executed use, subject to the collateral power to Moses B. Ives to appoint the estates in fee simple, overriding and defeating her estate. Neither the power of disposition over the proceeds, given Mr. Ives, (any more than in the case of powers to executors to sell for the payment of debts) nor the limitation, "for the *sole, separate* and *exclusive* use and benefit" of Mrs. Rogers, though a *feme covert,* ( *Williams* v. *Waters,* 14 Mees. & Welbs. 166, *Ware* v. *Richardson,* 3 Maryland, 505,) nor that the power is to be exercised by sale *and conveyance,* would seem of necessity to require that the legal estate should be vested in the trustee, if indeed the absence of all intermediate active trusts—of all declaration as to the mesne rents and profits— did not require, that until the exercise of the power the legal estate should vest in the *cestui que use.* But while this was one obvious object and effect of the codicil, viz., to vest, beyond ques-

tion, the legal title in the trustee, during the life or coverture of Mrs. Rogers, (but no longer, see cases *infra*,) yet neither this, nor to confer upon her testamentary power of disposition over the estates during coverture; seem entirely to answer its purposes. It evidently looks further. Upon Mrs. Rogers' decease, living her husband, the trustee is to stand seized to certain specified uses " *of the said estates*," not merely of so much of them as may then remain, but of *the estates themselves.* Now, it is clear, if the power of sale remains, the whole estate may be converted and paid over to Mrs. Rogers, during her life, to the entire exclusion of those claiming under these uses, though claiming as purchasers under this codicil. Again, if the trustee sells and reïnvests, upon what trusts shall he reïnvest? those of the will alone, or those of the will and codicil together? If of the will alone, Mrs. Rogers' testamentary power over such reïnvestments is gone, and thus, evidently, the purpose of the codicil defeated. But to say that the reïnvestments are to be upon the trusts of both will and codicil, is to strain the language of the will to meet something not in existence, and which could not have been in the contemplation of the testatrix at the time of using it. The reïnvestments must be upon the trusts of the will alone. *Gallini* v. *Noble*, 3 Mer. 691 ; *Francis* v. *Callier*, 4 Russ. 331, (4 Eng. Cond. Ch. 332). We submit, therefore, that it is not consistent with the whole scope and purpose of the codicil, that the power of sale should remain, and that it is therefore revoked.

II. But supposing the power of sale is not revoked by the codicil, still the plaintiff is not entitled to a decree. 1. It is claimed that the deed of release from Mr. and Mrs. Rogers, tendered to the defendant, in some way confirms and completely validates the title attempted to be made to him by the trustee, even if the title made by the trustee himself is itself defective. Upon this demurrer, it is a sufficient reply to this, to say, that this bill is framed on no such ground. If the title to be made to the defendant rests at all upon this release, the bill is defective for want of parties. If the defendant is to be forced to take a title resting upon Mr. and Mrs. Rogers' deed, he is, at least, entitled to have them come in as parties to the bill, so that they and their respective interests in the estate may be bound by the

decree. But apart from this, this release is a mere nullity as regards this case. It clearly is so, unless Mrs. Rogers has in herself a complete power of appointment or disposition over the fee of this land,—a power which she might equally well exercise adversely to, as concurrently with, the trustee, and which he would be compellable to confirm, by releasing to her appointee or grantee the legal title. It is obvious such was not the intent of the testatrix in creating this trust. But it is claimed Mrs. Rogers has this power, because it is claimed she has the full equitable fee in these lands. We reply, *first*, even if she has, still it is now the settled law of this State, in accordance with the better policy and reason upon this subject and with the weight of American authority, that she has only those powers over that estate which are expressly conferred upon her by the trust instrument, not as the argument for the plaintiff seems to assume, all powers that are not prohibited to her, but only such as are *expressly granted.* *Cook* v. *Metcalf,* 2 R. I. Rep. 355. We look in vain, in this will and codicil, for any express power to Mrs. Rogers to appoint or convey these lands by deed, or in any other manner, except, in a single contingency, by will. It is said, indeed, that by the codicil, in a certain contingency, the estates are limited to the use of her heirs and *assigns,*—thus, it is claimed, recognizing her power of conveying her equitable estate by deed. The first and all sufficient reply to this, for the purposes of this case, is, that this limitation is upon a contingency that has not yet happened and may never happen, to wit, the decease of Mrs. Rogers in the lifetime of her husband; and the power, if any is to be implied, cannot operate beyond the given contingency. But apart from this, this is far too broad an inference from this word "assigns," used in this connection. No such force could have been intended for it. Such a power, if intended to have been given, would not have been left to such implication. The word seems rather to have been used here inadvertently, as an usual, casual expression, without reference to any definite meaning or force to be given it. *Secondly.* We reply as to this release, Mrs. Rogers has not the equitable fee in these lands, but a mere equitable life estate. The remainder to her heirs, whether under the codicil, in the event she dies intestate in the life-

time of her husband, or under the will, in the event she survives her husband, is clearly a legal estate—*an executed use*—and so cannot coalesce with her equitable life estate, and her heirs consequently take as purchasers. 2 Jarman on Wills, 244; *Shepland* v. *Smith,* 1 Bro. Ch. Rep. 74; Doe, *dem. Hallen* v. *Ironmonger,* 3 East. 533; *Robinson* v. *Grey,* 9 Ib. 1; 2 Washburne on Real Prop. pp. 169, 170, § 6. This being so, it is obvious, that even supposing this release can operate at all in the absence of any express power, yet, in any view, it can only operate to pass Mrs. Rogers' present interest—her equitable life estate—and cannot estop her, or those claiming in remainder, from setting up against it a future acquired, or future vesting, interest in these lands. Nor can it extinguish her power of appointment by will, given in the codicil. *Parker* v. *White,* 11 Vesey, 209; *Townsend* v. *Wilson,* 1 Barn. & Ald. 608, in every respect a far stronger case than the case at bar; 2 Washburne on Real Prop. p. 309, § 3; *Ellis* v. *Fisher,* 3 Sneed, (Tenn.) 231.

2. The case then (supposing the power of sale in the will not to be revoked by the codicil) rests simply upon the question, whether that power survives and passes to the present plaintiff; and this again upon the question, whether or not this was a discretionary power within the meaning of that term as defined by the adjudged cases; if it was, it is not denied that it does not survive. Trust powers of sale like this are not ordinary powers, in the sense in which the term is evidently used in the argument for the plaintiff. Unless expressly conferred, either in direct language or by necessary implication from other express trusts, they do not exist. "A trustee could rarely be justified in selling the trust estate for any purpose, however beneficial, without an authority, express or implied, conferred on him for that purpose by the trust instrument." Hill on Trustees, 471, (top 685.) Nor do these powers, if discretionary, survive or pass with the transmission of the estate unless so provided in express terms; *prima facie* they are personal to the original trustee. As the rule is stated as the result of the authorities, in Hill on Trustees, in the paragraph immediately following that quoted for the plaintiff: "Where, however, a power given to the original trustee is of a kind that indicates a personal confidence, it will, *prima facie,*

be confined to the individual to whom it is given, and will not, *without* express words, pass to others to whom, by legal transmission, the character of trustee may happen to belong; and though the estate, with the trust attached to it, will be in the trustee appointed· by the court, yet the power (being one of that description) will be extinct." Ib. 211, (top 301.) Again: " a power of sale, whether it be a common law authority or one taking effect under the statute of uses, can be exercised *only* by the parties to whom it is *expressly given.*" Ib. 472, (top 687.) " Powers of sale, of leasing and of varying the securities, also come within the class of discretionary powers which is now under consideration." Ib. 495, (top 725.) Now, it is difficult to conceive how a power of sale can ever be discretionary, if not so in the present case. It certainly falls far within the definition of those powers given by the same author: " Whenever an authority is given to trustees which it is either not compulsory upon them to exercise at all, or, *if compulsory*, the time or manner or extent of its execution is left to be determined by the trustees, that is obviously a discretionary power, though the extent and nature of the discretion may vary in each case." Ib. 485, (top 711.) See, too, cases referred to in the opening. It is said the burden upon this question is upon the defendant. This is a matter of little consequence, as it is purely a question of construction. But where, as here, within six or eight short lines within which this entire power· is' stated, it is *three times* declared by the testatrix herself to be discretionary, the burden would rather seem to be upon those who asserted the contrary. Again, it is said, that the power in this case is conferred upon " Moses B. Ives, trustee as aforesaid," and from this it is argued that the power survives, and passed to the present plaintiff. But it is settled that no such effect can be given to this language. Much stronger language, conferring the power upon the trustees as such without naming them, (here it is a mere personal description added to the name,) and even accompanied by language in express terms continuing the power beyond the original trustees, was used in some of the cases referred to in the opening, which yet held that the power did not pass to the appointee of the court. See, also, *Down* v. *Morrall,* 1 M. & Keene, 561, (7 Eng.

Cond. Ch. 165); but further authority upon a point so clear cannot be needed.

AMES, C. J. By the will of Mrs. Ward, as set forth in the bill, her niece, Mrs. Rogers, took an equitable estate in fee simple in all her real estate ; and, according to the established rule, this disposition can no farther be affected by the codicil than is absolutely necessary to give it effect. 1 Jarman on Wills, 160–173, and cases cited. The codicil, so far from limiting the estate of the equitable tenant in fee and the powers which such an estate carries with it, after unnecessarily expressing that she should have the full enjoyment of the income, seems to have been designed solely to confer upon her a fuller power of disposing of it than the then state of the law permitted to a married woman over her separate estate, by introducing a power of appointment by will, notwithstanding coverture. We construe the words with which the codicil closes,—" and in default of such direction or appointment, in trust for the heirs and assigns of the said Eliza B. Rogers forever,"—as a mere affirmation, from abundant caution, that in case of the non-exercise of this power, the destination given to the estate by the will was not to be disturbed.

There is not only no clause in the will or codicil of Mrs. Ward, expressly or by implication, forbidding Mrs. Rogers, as equitable tenant in fee, to alienate, during coverture, her equitable estate, or to anticipate the income of the same, but both will and codicil express that her equitable estate extends not only to her and her heirs, but also to her *assigns;* a word of significance in the carefully chosen phraseology of such a trust. Without such restraint, it is not to be doubted, that the equitable estate of a married woman, in real property settled to her sole and separate use, is as alienable by her,—she and her husband joining in a deed executed in solemn form under the statute,—as her legal estate in real property. *Acton* v. *White*, 1 Sim. & Stu. 429, 432; *Medley* v. *Horton*, 14 Sim. 222, 225 ; Adams' Equity, 45 ; 2 Story's Eq. Jurisp. §§ 974 1388–1394 ; and see Hill on Trustees, 421, and n. 1. If this be so by the general law, in application to a trust estate for the separate use of a married woman for life, much more must it prevail in a case like the present, in which the trust is declared, both by the will and codicil, to be not only

for her and her heirs—that is, in fee—but also for her "assigns," a word which, as we construe it, plainly declares that her trust estate was to be assignable. See *Graftler* v. *Humpage*, 1 Beav. 46, 51 ; *Hames* v. *Hames*, 2 Keen, 646, 651, 652.

The case of *Metcalf* v. *Cook*, 2 R. I. Rep. 355, as a decision upon the particular case before the court is not designed to be disturbed ; but if it is understood as laying down a different rule of law in relation to the alienability of the estates of married women settled to their separate use, from that generally prevalent in England and in this country, as specially required by the policy of Rhode Island, we desire to limit it, in this respect, to the case before the court, as distinguished from the remarks of the Judge who delivered the opinion, upon the general law relating to the subject of decision. It may be doubted, however, whether these remarks were designed to reach the particular question now before the court ; since the prefatory part of the opinion puts the decision upon "the construction of the will of Elisha Waterman, the trusts thereby created, and such rules of equity applicable to said trusts as may be deemed consistent with the established *laws* and policy of this State relative to the legal rights and liabilities of married women, and their power and control over their separate property and estate." The only established law and policy of this State, which could have been alluded to, are the law and policy of the statute of this State, so long existing, which authorizes a husband and wife of full age, seized of real estate in her right, to convey the same by deed, which she, being examined privily and apart from her husband by the magistrate taking the acknowledgment, and having the deed shown and explained by him to her, acknowledges to be her voluntary act, and that she doth not wish to retract the same, and the law and policy of the more recent act, securing the property of married women to their sole and separate use, which provides, that the same shall not be sold, leased, or conveyed by the husband unless by the same solemn form of conveyance. Rev. Stats. Ch. 136, §§ 4–10. Except so far as these statutes, which relate to the alienation of the *corpus* of the property of married women, regulate the conveyance of it, we are not aware of any law or policy prevalent here, which does not prevail in

every country of the common law ; and these statutes, so far from restraining the right of a married woman to alienate her real property, even when settled to her sole and separate use, in cases and in modes in which it is permitted by the general law, provide in such cases an easier mode of accomplishing it, when the mode is not provided for by the deed of settlement, than any known to the common law.

It may be added, that the power of the trustee, named in the will, to sell portions of the trust estate for better investment, or to benefit by the proceeds the *cestui que trust*, Mrs. Rogers, is quite distinct, in purpose and extent, from *her* power to convert the same, as the unfettered equitable owner in fee thereof. *Medley* v. *Horton*, 14 Simons, 222, 225, 226. It cannot be construed to restrict her right to alienate in right of her equitable estate ; but as a part of the trust for her separate use, furnished a mode of alienation under the will for her benefit, free from the control of her husband, and not requiring his assent. Ibid.

In this view of the case, it is unnecessary for us to decide the question, whether the power to sell, vested by the will in the late trustee, devolved upon his successor in the trust appointed by the court ; since the equitable tenant in fee, by joining with her husband, who consented to the contract of sale, in a proper deed under the statute, can convey to the purchaser her beneficial interest in the purchased property, when he will be entitled to call upon the trustee to release *pro tanto* the legal interest. 2 Story's Eq. Jurisp. §§ 977, 979.

As all parties to this amicable suit are desirous to execute the contract of sale, we have not looked into the conveyances tendered, for the special purpose of seeing if they conformed to the views above expressed. If they do not, they can easily be made to do so ; and if the parties desire the decision, as well as the opinion, of the court, it would be advisable to amend the bill, by making Mr. and Mrs. Rogers parties plaintiffs to the same. This being done, in the absence of consent, our only decree can be, that the defendant must answer, over the demurrer, to the bill.